## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **LIBERTY MUTUAL FIRE INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 19-cv-3138** |
| | ) | |
| **KELLIE M. GLICK and KACI CLAYTON, as Special Administrator of the Estate of Kenzi Alyse Schuler, Deceased,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

This cause is before the Court on the Motion for Summary Judgment (d/e 33) filed by Defendant Liberty Mutual Fire Insurance Company.  For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED.

## I. BACKGROUND

On March 8, 2019, Defendant Kaci Clayton, as special administrator of the estate of Kenzie Alyse Schuler, deceased, filed an action against Defendant Kellie M. Glick in the Circuit Court of Montgomery County, Illinois, Case No. 2019L4, titled <u>Kaci Clayton,</u>

<u>Special Administrator of the Estate of Kenzi Alyse Schuler,</u>

<u>Deceased v. Kellie M. Glick</u>.  <u>See</u> Motion, d/e 33, p. 2.  The

underlying lawsuit alleges that Glick failed to provide proper care

for an infant, Kenzie Alyse Schuler, while Defendant Glick was

caring for the infant at Glick's home.  Glick had a homeowner's

insurance policy through Plaintiff Liberty Mutual Fire Insurance

Company ("Liberty Mutual") and seeks Liberty Mutual to defend on

her behalf and indemnify her in the underlying lawsuit.  Liberty

Mutual agreed to defend Glick but reserved its rights based on two

exclusions in the homeowner's insurance policy.

Thereafter, on May 28, 2019, Liberty Mutual filed this instant

lawsuit against Kaci Clayton, as special administrator of the estate

of Kenzi Alyse Schuler, deceased, and Kellie M. Glick for declaratory

judgment that Liberty Mutual does not have a duty to defend or

idemnify Glick in the underlying lawsuit.

On August 27, 2020, Liberty Mutual filed a motion for

summary judgment that is now before the Court.  <u>See</u> d/e 33.

Clayton filed a response opposing the Court granting summary

judgment, arguing that a genuine issue of material fact exists.  <u>See</u>

d/e 38.  Glick did not respond to the motion for summary judgment.  Liberty Mutual also filed a reply brief.  See d/e 43.

## II. JURISDICTION

This Court has subject matter jurisdiction because Plaintiff's action is brought pursuant to 28 U.S.C. § 2201.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").  The Court also has diversity jurisdiction.  See 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States . . . .").  Plaintiff has its principal place of business in Massachusetts and is incorporated under the laws of Wisconsin.  See Complaint, d/e 1, p. 2.  Defendants Glick and Clayton are citizens of Illinois.  Id.  The amount in controversy exceeds $75,000.  Id.  Venue is proper because Defendants reside in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.  28 U.S.C. § 1391(b)(1), (b)(2).

### III. FACTS

On January 29, 2018, an incident occurred while Glick was caring for Kenzi Alyse Schuler, an infant of Kaci Clayton and non-party Kristopher Schuler, at Glick's residence in Farmersville, Illinois.  See d/e 33, p. 2.  In the underlying lawsuit filed in the Circuit Court of Montgomery County, Illinois, filed as a result of the incident, Clayton alleges that Glick allegedly failed to care and look after Kenzi, including placing Kenzi on furnishing that was not suitable for an infant, failing to position Kenzi in a manner that would prevent asphyxiation, and failing to prevent or intercede in stopping death by asphyxiation.  Id. at 2-3.  On January 29, 2018, Kenzi asphyxiated and died.  Id. at 3.  In the underlying lawsuit, Glick is requesting over $50,000 in compensatory damages and costs for Kenzi's death.  Id.

On January 29, 2018, Glick provided home day care services to Clayton for Kenzi in exchange for cash compensation of $25.00[1].

---

[1] Liberty Mutual served Glick with requests for admission, to which Glick did not respond.  The requests are deemed admitted due to Glick's failure to respond.  See Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.").

Id. at 4.  Prior to and on January 29, 2018, Glick received $25.00[2] a day from Kenzi's parents pursuant to an agreement with Glick and Kenzi's parents for Glick to provide home day care services for Kenzi.  Id. at 3.  Glick and Kenzi's parents did not have a written or formal agreement.  See d/e 38, p. 2.  Instead, Glick provided day care services on days when Kenzi's farther or Clayton worked.  Id. at 2-3.  Clayton provided cash payments to Glick at the end of the week depending on the number of days during the week Glick cared for Kenzi.  See d/e 33, p. 4.  Glick cared for Kenzi for approximately seven weeks prior to Kenzi's death.  See d/e 38, p. 3.  Glick is not related to Kenzi, Clayton, or Kristopher Schuler.  See d/e 33, p. 4.

Liberty Mutual provided a homeowner's policy to Glick, which was a LibertyGuard Deluxe Homeowners Policy bearing policy number H32-248-910969-00 7 5.  Id. at 5; d/e 33-6, pp. 2-3.  The

---

[2] Glick responded to discovery stating, "I believe the most I ever charged was $25/day but I cannot really remember – it may have been $20." See d/e 33-2, p. 2.  In Clayton's discovery response, Clayton stated that Glick received $25 per day.  See d/e 33-4, p. 3.  Glick failed to respond to requests for admissions, and the requests are deemed admitted.  See Fed. R. Civ. P. 36(a)(3).  One of the requests for admissions states, "Admit that Glick received cash compensation in the amount of $25.00 for each day that Glick provided home day care services to Clayton for Kenzi." See d/e 33-5.  Based on the evidence, the Court finds that Glick was paid $25 a day in exchange for childcare services for Kenzi.

policy period was December 25, 2017 to December 25, 2018, and

the insureds were Lance Glick and Kellie M. Glick.  Id.

      The homeowner's policy provides coverage if a lawsuit is

brought against an insured for damages arising out of bodily injury

or property damage that is covered under the policy.  See d/e 33, p.

6.  Section II – Liability Coverages – of the homeowner's policy

states:

> **COVERAGE E - Personal Liability**
> If a claim is made or a suit is brought against an
> "insured" for damages because of "bodily injury"
> or "property damage" caused by an "occurrence" to which
> this coverage applies, we will:
> 1. Pay up to our limit of liability for the damages for
>    which the "insured" is legally liable.  Damages
>    include prejudgment interest awarded against the
>    "insured"; and
> 2. Provide a defense at our expense by counsel of our
>    choice, even if the suit is groundless, false or
>    fraudulent. We may investigate and settle any claim
>    or suit that we decide is appropriate. Our duty to
>    settle or defend ends when the amount we pay for
>    damages resulting from the "occurrence" equals our
>    limit of liability.

See d/e 33-6, p. 19.  Pursuant to the homeowner's policy, "'Bodily

injury' means bodily harm, sickness or disease, including required

care, loss of services and death that results."  Id. at 9.

However, the homeowner's policy includes certain exclusions for circumstances that are not covered by the policy.  One of them is the "Business Pursuits Exclusion," which provides:

> **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":
> . . .
> b. Arising out of or in connection with a "business" engaged in by an "insured."  This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";
> . . . .

Id. at 19.  The homeowner's policy also includes an endorsement that the policy does not cover a home day care business (the "Day Care Endorsement").  The Day Care Endorsement begins "**NO SECTION II - LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS LIMITED SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS**," and includes the following language:

> If an "insured" regularly provides home day care services to a person or persons other than "insured" and receives monetary or other compensation for such services, that enterprise is a "business."  Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured"

to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1. Does not provide Section II – Liability Coverages because a "business" of an "insured" is excluded under exclusion 1.b. of Section II - Exclusions; . . . .

Id. at 47.

## IV. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party. Carrol. v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012). When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences

in the nonmoving party's favor.  <u>Egan Marine Corp. v. Great Am.</u>
<u>Ins. Co. of New York</u>, 665 F.3d 800, 811 (7th Cir. 2011).

## V. ANALYSIS

### A. Illinois Law Governs.

Both parties agree that Illinois law applies.  "Under Illinois
law, the interpretation of an insurance policy is a question of law
that is properly decided by way of summary judgment."  <u>Twenhafel</u>
<u>v. State Auto Prop. & Cas. Ins. Co.</u>, 581 F.3d 625, 628 (7th Cir.
2009) (quoting <u>BASF AG v. Great Am. Assurance Co.</u>, 522 F.3d 813,
818–19 (7th Cir.2008)).  Courts construe the policy as a whole.
<u>BASF AG</u>, 522 F.3d at 819.

"Both the policy terms and the allegations in the underlying
complaint are liberally construed in favor of the insured, and any
doubts and ambiguities are resolved against the insurer."  <u>State</u>
<u>Farm Fire and Casualty Co. v. Perez</u>, 387 Ill. App. 3d 549, 553(1st
Dist. 2008).  "However, the general rules that favor the insured
must yield to the paramount rule of reasonable construction which
guides all contract interpretations."  <u>Amerisure Mut. Ins. Co. v.</u>
<u>Microplastics, Inc.</u>, 622 F.3d 806, 811 (7th Cir. 2010) (internal
quotations omitted).

**B. Glick Received Compensation as Contemplated by the Day Care Endorsement.**

Liberty Mutual argues that the Day Care Endorsement excludes liability coverage of the underlying lawsuit.  The Day Care Endorsement provides, "If an 'insured' regularly provides home day care services to a person or persons other than 'insured' and receives monetary or other compensation for such services, that enterprise is a 'business.'"  See d/e 33-6, p. 19.  At issue is the word "compensation."

The Court construes the language of the policy to give effect of the intention of the parties.  Twenhafel, 581 F.3d at 629.  "Where the terms of an insurance policy are clear and unambiguous, they must be applied as written; but where ambiguity exists, the terms will be strictly construed against the drafter."  BASF AG, 522 F.3d at 819.  Moreover, "[p]olicy terms are ambiguous if they are reasonably susceptible to more than one interpretation, not simply if the parties can suggest creative possibilities for their meaning, and a court will not search for ambiguity where there is none."  Id.

The Court finds that the word "compensation" as written in the homeowner's policy is unambiguous as the word is not

"reasonably susceptible to more than one interpretation." BASF
AG, 522 F.3d at 819.  The Merriam-Webster Dictionary defines
compensation as "the act of compensating : the state of being
compensated."  Compensation, MERRIAM-WEBSTER DICTIONARY,
https://www.merriam-webster.com/dictionary/compensation (last
accessed March 15, 2021).  Compensate is defined as "to be
equivalent to : COUNTERBALANCE."  Compensate, MERRIAM-
WEBSTER DICTIONARY, https://www.merriam-
webster.com/dictionary/compensate (last accessed March 15,
2021).  Black's Law Dictionary defines compensation as
"[r]emuneration and other benefits received in return for services
rendered; esp., salary or wages."  Compensation, BLACK'S LAW
DICTIONARY (11th ed. 2019).  The homeowner's policy specifically
says that compensation is "monetary or other," which is consistent
with the definitions in Black's Law and Merriam-Webster.  The
Court interprets compensation in the homeowner's policy to mean
something received in return for services.

In this case, Glick provided home day care services to Clayton
by caring for Kenzi on days chosen by Clayton and her husband.  In
return for this service, Clayton paid Glick $25.00 a day.  Clayton

argues that Liberty Mutual has not debunked the possibility that the $25.00 a day was for reimbursement of expenses.  However, both Defendants have admitted that Glick provided the service of caring for Kenzi and Clayton paid Defendant $25.00 a day for that service.  That is compensation.  Moreover, reimbursement of expenses falls within the definition of compensation.  See First Protective Ins. Co. v. Featherston, 906 So. 2d 1242, 1246 (Fla. Dist. Ct. App. 2005) (interpreting Black's Law's definition of compensation and holding that "even payment as reimbursement for expenses in a home day care constitutes compensation for purposes of the home day care endorsement.").  The Court finds that Glick received monetary compensation as stated in the Day Care Endorsement.

## C. The Day Care Endorsement Applies to the Underlying Lawsuit.

"The duty to defend is triggered if the allegations in the underlying complaint fall within, or potentially within, the policy's coverage."  Westfield Ins. Co. v. Nat'l Decorating Serv., Inc., 863 F.3d 690, 695 (7th Cir. 2017) (citing Lagestee-Mulder, Inc. v. Consol. Ins. Co., 682 F.3d 1054, 1056 (7th Cir. 2012)).  "[W]hen an

insurer seeks a declaratory judgment on the issue of coverage, it may present evidence to demonstrate that its policy does not cover the loss in question."  Gen. Ins. Co. of Am. v. Clark Mall Corp., 644 F.3d 375, 378 (7th Cir. 2011) (noting the Illinois Supreme Court's approval of Illinois appellate decisions holding the same).

The homeowner's policy provides liability coverage for bodily injury that falls within the policy.  However, Liberty Mutual argues that the Business Pursuits Exclusion excludes coverage in this case because the Exclusion does not provide coverage for "'bodily injury' . . . arising out of or in connection with a 'business' engaged in by an 'insured.'"  See d/e 33-6, p. 19.  Further, the "exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the 'business.'"  Id.

The homeowner's policy also excludes coverage for the day care business: "[i]f an 'insured' regularly provides home day care services to a person or persons other than 'insured' and receives monetary or other compensation for such services, that enterprise is a 'business,'" which is referred to as the Day Care Endorsement.

Id. at 47.  If Glick provided regular home day care services to a person or persons other than the insured and received compensation for such services, her services constitute a "business" and the homeowner's policy would not provide liability coverage for such "business."  Id.  ("Therefore, with respect to a home day care enterprise which is considered to be a 'business,' this policy: 1. Does not provide Section II – Liability Coverages because a "business" of an "insured" is excluded under exclusion 1.b. of Section II – Exclusions.").

The Court found earlier that Glick received monetary compensation as stated in the Day Care Endorsement in exchange for the service of caring for Clayton's child.  Based on the undisputed facts, the parties do not dispute that Glick was providing home day care services on January 29, 2018, which gave rise to the underlying lawsuit.  Glick provided care for Kenzi for approximately seven weeks.  Therefore, the Court finds that Glick's enterprise is considered a "business" pursuant to the Day Care Endorsement because Glick was regularly providing home day care services to Clayton for care of Kenzi and Glick received monetary compensation for those services, including on January 29, 2018.

Therefore, liability for the underlying lawsuit is excluded under the homeowner's policy.

Moreover, an exception to the Day Care Endorsement does not apply because Glick and Clayton did not exchange home day care services, and Kenzi, Clayton, and Clayton's husband are not relatives of Glick.  <u>See</u> d/e 33-6, p. 47 ("Mutual exchange of home day care services, however, is not considered compensation.  The rendering of home day care services by an 'insured' to a relative of an 'insured' is not considered a 'business.'").

## D. The Business Test Suggested by Clayton Does Not Alter the Outcome.

Clayton argues that this Court should apply a two-part test discussed in <u>Allstate Ins. Co. v. Mathis</u>, 302 Ill. App. 3d 1027 (3d Dist. 1999), which stated:

> In determining whether a business pursuit exclusion applies to a particular set of facts, courts in Illinois have typically applied a two part test: (1) is the activity regular and continuous? and (2) does the activity provide at least some portion of the insured's livelihood?

<u>Mathis</u>, 302 Ill. App. 3d at 1029.

In <u>Mathis</u>, Allstate Insurance Co. filed a declaratory judgment action against Allstate's insured, Denise Mathis, and others

claiming Allstate did not have a duty to defend based on Mathis'
renter's liability policy for an underlying lawsuit brought by the
Gradys, parents of a deceased child.  Id. at 1029.  The renter's
liability policy provided, "Any full or part-time activity of any kind
engaged in for economic gain including the use of any part of any
premises for such purposes. The providing of home day care
services to other than an insured person or relative of an insured
person for economic gain is also a business." Id.  The Mathis
Court, using the two-step test, held that the care provided by the
insured constituted a business activity that excluded insurance
coverage under the renter's liability policy:

> [The insured] provided day care service for the Grady
> children on a regular basis for 40 hours per week over
> approximately ten months. The Gradys paid her for the
> service at a rate of $3 (originally $4) per hour every week.
> Although Denise did not realize an enormous profit, she
> did receive some compensation that contributed to her
> family's livelihood.

Id. at 1029-30.

The policy language in Mathis, however, differs from the
homeowner's policy at issue in this case.  Here, the homeowner's
policy specifically defines what day care services are considered a
"business."  The language of the policy is not ambiguous, and a

two-part test is not necessary to interpret the policy.  This Court

earlier found that the facts of this case meet the Day Care

Endorsement in the homeowner's policy, which excludes coverage

for the underlying lawsuit.

Liberty Mutual also argues that the two-part test is not

routinely applied by Illinois courts.  See Allstate Ins. Co. v. Smiley,

276 Ill. App. 3d 971 (2d Dist. 1995) (assessing whether a home day

care service fell within the policy's business pursuit exclusion

without applying the two-part test).  Even applying the two-part

test, the facts in this case satisfy the "business pursuit exclusion"

as contemplated by the Mathis Court.  Glick provided day care

services to Clayton by caring for Kenzi over a seven-week period.

For every day that Glick cared for Kenzi, Glick received $25 in

compensation.  The Court presumes such compensation

contributed to her livelihood.  See Mathis, 302 Ill. App. 3d. at 1030

(noting that the insured received compensation "that contributed to

her family's livelihood" where the facts did not show that the

compensation contributed to the family's livelihood).

## VI. CONCLUSION

The Court finds and declares that Liberty Mutual does not have a duty to defend the underlying lawsuit brought by Clayton, and, therefore, Liberty Mutual also does not have a duty to indemnify. Metzger v. Country Mut. Ins. Co., 2013 IL App (2d) 120133, ¶ 19 ("Because the duty to defend is broader than the duty to indemnify, if an insurer owes no duty to defend, it owes no duty to indemnify."). For the reasons stated, Liberty Mutual's Motion for Summary Judgment (d/e 33) is GRANTED.

**IT IS THEREFORE ORDERED THAT:**

1.     Plaintiff Liberty Mutual's Motion for Summary Judgment (d/e 33) is GRANTED.

2.     The Clerk is DIRECTED to enter final judgment in favor of Plaintiff Liberty Mutual and against Defendants Clayton and Glick.

3.     Any pending motions are DENIED as MOOT, any pending deadlines are TERMINATED, and any scheduled settings are VACATED. This case is CLOSED.

**ENTERED: March 16, 2021**

**FOR THE COURT:**

*s/ Sue E. Myerscough*

**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**